Filed 11/13/14  Durham v. Live Nation Worldwide CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOYCE DURHAM et al., | H038391 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-09-CV146489) |
| v. | |
| LIVE NATION WORLDWIDE, INC., | |
| Defendant and Respondent. | |

Joseph Browning, Joyce Durham and Beverly Fair appeal from the judgment entered following the trial court granting summary judgment in favor of respondent Live Nation Worldwide, Inc. (Live Nation), on their claims for disability and racial discrimination under the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), negligence, intentional infliction of emotional distress and negligent hiring, training, supervision and discipline.  Browning, Durham and Fair, all of whom are African-American, were passengers in a vehicle which was denied access to disabled parking at a concert venue operated by Live Nation, despite Durham displaying her disabled parking placard to the parking attendant.  While walking from the general parking lot to the concert, Browning suffered a cardiac event and was transported to the hospital.

On appeal, Browning argues the trial court improperly decided issues of fact in granting summary judgment in favor of Live Nation.  Durham and Fair did not file opening briefs, but belatedly filed a joinder in Browning's brief.  We find no error and will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because it is the operative pleadings that define the issues presented in a summary judgment proceeding, we first summarize the allegations of the third amended complaint. Browning, Durham and Fair asserted five causes of action in that document: violation of the Unruh Civil Rights Act (Civ. Code, §§ 51, 52) on the basis of disability, violation of the Unruh Civil Rights Act (*ibid.*) on the basis of race, negligence, intentional infliction of emotional distress, and negligent hiring, training, supervision and discipline.

Browning, Durham, Fair and several of their friends purchased tickets to see Stevie Wonder perform at the Shoreline Amphitheater on July 5, 2008, in Mountain View, California. The group arrived early in order to secure disabled parking because Browning has a heart condition, with a defibrillator pacemaker, Fair has arthritis in her hip and Durham has degenerative disc disease and prior serious back injuries. On the day of the concert, they drove to the venue in two cars. Browning, Durham and Fair were passengers in the same vehicle. Upon arriving, they paid the $20 parking fee at the entrance to the parking lots, and then attempted to enter the disabled parking area. However, Tonya Suter, a parking attendant employed by respondent Live Nation,[1] asked them "in a hostile, belligerent and intimidating manner" how much they paid for parking. They told her they had paid $20 and Durham, who was sitting in the front passenger seat, showed Suter a disabled parking placard. Suter refused to let them park in the disabled parking area, telling them they could only do so if they paid $40 for parking. Durham showed Suter the disabled parking placard at least twice more, but Suter refused to let them access the disabled parking lot, physically blocking their vehicle's path.

Suter directed their group to park in a different section, which they did. Browning, Durham and Fair, along with their other friends, began to walk to the entrance

---

[1] Live Nation operates Shoreline Amphitheater, among other entertainment venues.

of the amphitheater, a distance of between one quarter and one half mile.  The day was very hot, and as they walked from the parking lot, Browning collapsed.  When paramedics arrived, Browning told them his defibrillator had shocked him several times as he lay on the ground.  Browning was transported to a nearby hospital for further treatment.

As Browning was being treated, Durham and Fair saw people parking in the disabled parking area, none of whom were African-Americans.  They approached a white couple who had parked nearby and asked if they paid $20 to park there, and the couple said they had.

A supervisor from Live Nation approached and asked Durham and Fair what had happened.  Durham explained Browning had collapsed due to a heart condition, aggravated by being forced to walk a long distance on a hot day, because they were refused entry to the disabled parking area.  As the supervisor went to speak with Suter, Durham and Fair asked several other people what they paid to park in the disabled parking area and the other patrons, all of whom were white, consistently said they had paid $20.

Live Nation brought motions for summary judgment or, in the alternative, summary adjudication against Browning, Durham and Fair.  The trial court granted Live Nation's motions and entered judgment in its favor.  The three plaintiffs appealed, but only Browning, acting in propria persona, filed an opening brief.[2]

---

[2] Durham and Fair, who subsequently filed a notice of joinder to Browning's opening brief, filed no opening briefs of their own.  They also signed the reply brief, though their names, addresses and telephone numbers do not appear on the cover as required by California Rules of Court, rule 8.40(c)(1).

## II.     DISCUSSION

### A.     *Standard of review*

In order to prevail on a motion for summary judgment, a defendant must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) "A court may grant summary judgment only when the evidence in support of the moving party establishes that there is no issue of fact to be tried." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 547.) In other words, summary judgment should be granted only when a moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

On an appeal from summary judgment, we review the record de novo. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.) Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether a triable issue of material fact exists. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582.) When reviewing an order granting summary judgment or summary adjudication, we apply the same three-step analysis as the trial court. (*Inter Mountain Mortgage, Inc. v. Sulimen* (2000) 78 Cal.App.4th 1434, 1439.) "First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)

We consider all of the competent evidence presented by the parties (declarations, judicial admissions, responses to discovery, deposition testimony, and items of which

4

judicial notice may be taken) and the uncontradicted inferences supported by the evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We do not weigh the evidence and inferences, but merely determine whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.) We resolve any doubt as to the granting of the motion in favor of the opposing party. (*Renna v. County of Fresno* (2000) 78 Cal.App.4th 1, 5.)

B. *Disability and racial discrimination in violation of the Unruh Civil Rights Act*

1. *The Unruh Civil Rights Act* (*Civ. Code, § 51 et seq.*)

"The Unruh Civil Rights Act prohibits discrimination based on a person's membership in a particular group: 'All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.' (Civ. Code, § 51, subd. (b).) 'Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to [the act]' is liable for damages and penalties. (Civ. Code, § 52, subd. (a).)" (*Turner v. Association of American Medical Colleges* (2008) 167 Cal.App.4th 1401, 1407-1408.) Only "the Attorney General, any district attorney or city attorney, or any person aggrieved by the conduct" in question may bring suit under the Unruh Civil Rights Act. (Civ. Code, § 52, subd. (c).)

2. *No triable issues of fact as to claim of disability discrimination*

Browning argues the trial court erred in finding no triable issues of fact in connection with his first cause of action for disability discrimination in violation of the Unruh Civil Rights Act by improperly weighing the evidence presented by the parties.

5

Live Nation set forth as undisputed material facts the following: (1) Suter did not know Browning was disabled; (2) no one from Live Nation, including Suter, made any statements indicating Browning was denied a disabled parking spot on account of his disability; and (3) Suter did not intend to deny Browning a disabled parking spot on account of his disability. Browning disputed these facts by pointing to deposition testimony and interrogatory responses, indicating that Suter was shown a disabled parking placard several times, yet still refused to allow Browning and his companions to access disabled parking. Live Nation's own employee testified that if an individual in a car displays a disabled parking placard, the parking attendant must allow the vehicle to park in the disabled parking area. The vehicle's occupants need not demonstrate that they are each disabled.

In order to maintain a lawsuit under the Unruh Civil Rights Act, Browning must establish that he is a "person aggrieved" under the statute. (Civ. Code, § 52, subd. (c).) "The courts have acknowledged that a cause of action under the Unruh Act is of an 'individual nature' [citation], and that 'the rights protected by the act are enjoyed by all persons, *as individuals*.' " (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1383.) Since Browning admitted that he personally did not have a disabled parking placard, he had no personal entitlement to use the disabled parking area and thus was not a "person aggrieved" under the Unruh Civil Rights Act.

Furthermore, even if Browning could be considered to have standing to bring an action under the Unruh Civil Rights Act, it is undisputed that Suter did not know and could not have known of Browning's heart condition. In order to recover for a violation of Civil Code section 51, subdivision (b), a plaintiff must show that the defendant intentionally discriminated against him or her on the basis of the plaintiff's disability. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1149.)

6

Browning admitted he personally had no communication with Suter at any time, and he submitted no evidence to show that Suter knew that he, as opposed to the person who supposedly displayed a disabled parking placard to her, had a qualifying disability. Accordingly, Suter could not have intended to discriminate against Browning on the basis of his unknown (to her) disability.

### 3. *No triable issue of fact as to claim for racial discrimination*

With respect to the second cause of action for racial discrimination in violation of the Unruh Civil Rights Act, Browning again argues the trial court improperly weighed the evidence in granting Live Nation's motion for summary judgment. In support of its motion, Live Nation presented evidence that none of its employees, including Suter, made any statements to Browning suggesting he was denied a disabled parking spot because of his race and that no employee, including Suter, had any intent to deny Browning access to the disabled parking area on the basis of his race. In opposition, Browning presented evidence that Suter became rude, belligerent and demeaning to him and his companions after she saw that they were all African-American. The trial court dismissed Browning's facts, concluding that Suter's conduct, combined with her words, did not amount to a nonverbal communication and did not provide a sufficient link between her actions and Browning's race.

As with a claim for disability discrimination, in order to recover on a claim for racial discrimination in violation of the Unruh Civil Rights Act, a plaintiff must show that the defendant intentionally discriminated against him or her on that basis. (*Harris v. Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p. 1149.) Further, triable issues of fact are created by conflicting evidence, not speculation or conjecture. (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807.)

Browning submitted no such evidence to support his claim. He admitted Suter made no statements to him or anyone else in the car about their race, only that she was rude and hostile towards them when they sought to turn into the disabled parking area.

7

He admitted he does not know if other African-American concertgoers were admitted to the disabled parking area, though his companions apparently observed several white couples parking there.[3]  However, his conclusion that Suter acted in a rude and hostile manner toward him and his companions because she intended to discriminate against him because of his race is nothing more than speculation.  Again, his speculation that Suter's rude and hostile conduct and attitude demonstrated her intent to discriminate against him on the basis of his race is not sufficient to raise a triable issue of fact.

       C.     *No triable issue as to negligence claim*

With respect to his negligence cause of action, Browning argues the trial court improperly found Live Nation was under no duty to allow him to park in a disabled parking area because he did not have a disabled parking placard.  However, Browning was a passenger in a vehicle that was entitled to park in the disabled parking area, and another passenger displayed the parking placard several times.

As a general rule, each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112; Civ. Code, § 1714.)  " 'Courts, however, have invoked the concept of duty to limit generally "the otherwise potentially infinite liability which would follow from every negligent act . . . ." ' " (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.)  As noted, whether a legal duty of care exists " 'is a question of law to be determined on a case-by-case basis.' " (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472.)  The court's task in determining whether a duty exists "is not to decide whether a *particular* plaintiff's injury was reasonably

---

[3] The trial court properly sustained Live Nation's hearsay objections to the interrogatory responses and deposition testimony offered by Browning regarding what certain white concertgoers told Browning's companions they paid to park in the disabled parking area. (Evid. Code, § 1200.)  That evidence was offered to prove the truth of the matter asserted, i.e., that white concertgoers were not asked to pay as much as African-Americans for disabled parking.

foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 573, fn. 6.)

An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. (*Allabach v. Santa Clara County Fair Assn.* (1996) 46 Cal.App.4th 1007, 1011.) "The existence of a duty is a question of law for the court." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674.) In making this determination, the court must balance the following factors: " 'foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Id.* at p. 675, fn. 5, quoting *Rowland v. Christian*, *supra*, 69 Cal.2d at p. 113.)

Browning does not dispute he did not possess a disabled parking placard and thus, had no personal right to access the disabled parking area. Browning also does not dispute that Suter did not know he had a heart condition, thus making it unlikely she could have foreseen that Browning would suffer any injury as a consequence of having to park in a different area of the lot. Although another passenger in the car may have possessed and displayed such a placard, that does not impose a duty on Live Nation to afford disabled parking to Browning. Based on these undisputed facts, the trial court properly found Live Nation owed no duty to Browning.

D.     *No triable issue as to intentional infliction of emotional distress*

In connection with his fourth cause of action for intentional infliction of emotional distress, Browning contends that the trial court's findings are predicated on its determination that Suter did not act in a discriminatory manner toward him.  The trier of fact should be allowed to determine whether or not Suter discriminated against him on the basis of his disability and/or race.  If so, her conduct could be considered so outrageous as to support a verdict in his favor on this claim.

For intentional infliction of emotional distress, "[i]t is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 (*Christensen*); *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1002.)  In other words, " 'The law limits claims of intentional infliction of emotional distress to egregious conduct *toward plaintiff* proximately caused by defendant.'  [Citation.]  The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff." (*Christensen*, *supra*, at p. 905.)

Browning presented no evidence that he directly interacted with Suter in any way, and thus has not presented evidence raising a triable issue of fact that Suter intended to cause him severe emotional distress.  He has not established triable issues of fact to support his claims for discrimination on the basis of disability or race, and therefore has no admissible evidence, as opposed to speculation and conjecture, to show that Suter engaged in intentional and outrageous conduct by refusing to allow the vehicle in which he was a passenger to park in the disabled parking area.

E.     *No triable issue as to negligent training cause of action*

In opposition to Live Nation's motion, Browning submitted Suter's deposition testimony in which she admitted she was provided no training for the job of parking

10

attendant. The trial court improperly decided an issue of fact in granting Live Nation's motion on this cause of action.

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." (*Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564.) Negligence liability will be imposed upon the employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054.)

In opposition to Live Nation's motion on his negligent training cause of action, Browning points to Suter's deposition testimony where she says she had "[n]o training." However, this response was made to the following question: "Q. In other words, *before you started doing your duties on the night in question* you would be standing there down near lot C where you pointed out directions to people to the right and to the left--[¶] A. Uh-huh. [¶] Q. --did you have any training for that *particular job*?" (Italics added.) Immediately following that exchange, Suter is asked, "Q. And how did you learn to do that, in other words? [¶] A. My supervisor told me what to do. [¶] . . . [¶] Q. And what did [your supervisor] tell you about what to do in terms of directing people to the parking lot areas which included handicap parking? [¶] A. To look for the parking passes. Either you have the $40.00 pass or you have the $20.00 pass or you have the handicap placard."

Consequently, the trial court did not engage in improper factfinding. The deposition testimony cited by Browning establishes at most that Suter was not provided training immediately before going to work as a parking attendant that day. When asked how she learned to direct people to the left or the right, she testified that her supervisor instructed her to look for one of three parking passes.

Even assuming, however, that Suter's testimony is sufficient to raise a triable issue on the question of her training by Live Nation, the cause of action still fails because Browning presented no evidence to raise a triable issue on the element of causation.

Browning was owed no duty under the Unruh Civil Rights Act, either because of his race or his disability, and was owed no duty sounding in tort. As a result, any negligent training of Suter by Live Nation was not the cause of any harm Browning suffered.

F.     *The joinders by Durham and Fair in Browning's arguments are not sufficient to meet their burden on appeal*

In all cases, the burden is on the appellant to overcome the presumption of correctness and to demonstrate reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) The California Rules of Court provide that "[e]ach appellant must serve and file an appellant's opening brief." (Cal. Rules of Court, rule 8.200(a)(1).) That brief must "[s]tate each point under a separate heading or subheading summarizing the point, . . . *support each point by argument and*, *if possible*, *by citation of authority*; and . . . [s]upport any reference to a matter in the record by a citation to the . . . record where the matter appears. . . ." (*Id*., rule 8.204(a)(1)(B)-(C), italics added.)

A brief must contain reasoned argument and legal authority to support its contentions or the court may treat the claim as waived. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.) That a party is in propria persona does not excuse compliance with these requirements. (See *Stokes v. Henson* (1990) 217 Cal.App.3d 187, 196.) This is because "[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

A party is expressly entitled to forego filing his or her own brief and, instead, "join in or adopt by reference all or part of a brief in the same or a related appeal." (Cal. Rules of Court, rule 8.200(a)(5).) Availing oneself of this broad permission to join in another's brief does not, however, remove the joining party's burden to demonstrate reversible error as to his or her individual claims. (*People v. Nero* (2010) 181 Cal.App.4th 504, 510, fn. 11.) "It is not the duty of a reviewing court to search the record to find material

12

supporting an appeal, or some specific ground therefor, thus effectively assuming the role of appellant's advocate." (*Kenworthy v. State of California* (1965) 236 Cal.App.2d 378, 401.)

Because neither Durham nor Fair have submitted the requisite argument, authority and citations to the record to support their claim that the trial court erred in entering judgment against them on their claims, we find they have not met their burden on appeal. The judgment against them will therefore be affirmed.

## III.    DISPOSITION

The judgment in favor of Live Nation is affirmed.  Live Nation is entitled to its costs on appeal.

_____
                                        Premo, J.

WE CONCUR:

_____
             Rushing, P.J.

_____
             Márquez, J.